T.C. Memo. 1999-243


UNITED STATES TAX COURT


JUDITH D. LAWTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18035-97.                    Filed July 27, 1999.


Thomas G. Lemons, for petitioner.

John M. Zoscak, Jr., for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7443A(b) of the Code and Rules 180,
181, and 182.  Unless otherwise indicated, all section references
are to the Internal Revenue Code in effect for the taxable years
in issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioner's 1994 and 1995 Federal income taxes of $3,618 and $2,848, respectively.

The issue for decision is whether any part of certain cash payments received by petitioner from her former spouse were amounts fixed in their divorce instrument as a sum payable for the support of their minor child. Petitioner's entitlement to the earned income credit is dependent upon our resolution of the issue for decision.

All of the facts have been stipulated and along with the attached exhibits are incorporated herein by reference.

FINDINGS OF FACT

Petitioner resided in Houston, Pennsylvania, when she filed the petition in this case.

Petitioner is the former spouse of Raymond Lawton. Petitioner and Raymond Lawton were separated and living apart in 1994 and 1995. During 1994 and 1995, petitioner and Raymond Lawton had one minor child requiring child support.

The Court of Common Pleas of Washington County, Pennsylvania, (court of common pleas) issued a temporary order on July 23, 1993, in the case of Judith Lawton v. Raymond Lawton, Case No: 1351 DR 92, directing Raymond Lawton to make monthly payments of $1,265 plus arrearages, effective June 8, 1993, "for support of spouse and one child."

Under support guidelines issued by the Pennsylvania Supreme Court, Raymond Lawton would have been required to pay for the support of petitioner and one child, $1,183 per month during 1994 and 1995. In response to petitioner's motion, as plaintiff, to modify its temporary order, the court issued a second temporary order on January 21, 1994, vacating its first temporary order and ordering Mr. Lawton to pay monthly, effective June 8, 1993, the sum of $1,183 "for support of spouse and one child."

On March 9, 1994, the court issued an order of support vacating the temporary order of July 23, 1993, and directing Mr. Lawton to pay, effective June 8, 1993, the sum of $1,075 per month "for support of spouse and one child."

Petitioner and Mr. Lawton were divorced in July of 1995 and on August 7, 1995, the court of common pleas issued an order requiring Mr. Lawton to pay "the sum of $500 per month for one child, Genevieve (1/31/78) and $75 per month for Ryan (5/23/75) for college support."

Raymond Lawton made support payments to petitioner of $12,900 during 1994 and $6,950 in 1995. Petitioner did not report as income in either year the payments she received from Raymond Lawton pursuant to the orders of the court of common pleas issued prior to the divorce in July of 1995.

OPINION

Gross income includes payments of alimony or separate maintenance.  See sec. 71(a).  Section 71(b)(1) defines the term "alimony or separate maintenance payment":

>    (1) In general.  The term "alimony or separate maintenance payment" means any payment in cash if--
>
>    (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
>    (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
>    (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
>    (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Positions of the Parties

Respondent's notice of deficiency determined that petitioner received alimony or support payments of $15,499 in 1994 and $9,611 in 1995.  The parties have stipulated, however, that the payments actually made by Raymond Lawton to petitioner totaled $12,900 in 1994 and $6,950 in 1995.  Respondent argues that the payments constitute taxable income because they are payments of alimony or separate maintenance as described in section 71(b)(1).

Petitioner does not dispute that to the extent of $7,332 in 1994 and $3,666 in 1995, the amounts she received from Raymond Lawton are alimony or separate maintenance payments. But the balance of the payments are not alimony or support payments, petitioner argues, because they are described in section 71(c)(1)--amounts fixed by the divorce instrument as payable for the support of the minor child of Raymond Lawton. Petitioner argues that the amount of the payment is fixed, not in the instrument itself, but by operation of the support guidelines contained in Pennsylvania court rules.

The text of the orders of the court of common pleas issued in petitioner's divorce proceedings provides for the support of "spouse and one child". Respondent argues that this language fails to fix any of the amounts at issue as payable for the support of the minor child of Raymond Lawton and petitioner. To the extent that petitioner goes outside the language of the court order of support to prove amounts for child support, respondent argues that she is improperly relying on "evidence extrinsic to the divorce or separation instrument".

We must decide, therefore, whether the support terms of the court order under which petitioner received her payments fixed a sum as payable for the support of the minor child of her former spouse. If they did not fix such an amount, we must sustain

respondent's adjustments to the extent of the payments actually received by petitioner.

## "Fixed" Amount of Child Support

Treatment as alimony:

shall not apply to that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse.  [Sec. 71(c)(1).]

See also Ambrose v. Commissioner, T.C. Memo. 1996-128; sec. 1.71-1T(c), Q&A-16, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).

In addition, any payment will be treated as an amount fixed as payable as child support if the payment specified in the instrument is reduced upon the happening of a "contingency specified in the instrument relating to a child" or at a time "which can clearly be associated with a contingency".  Sec. 71(c)(2); see also section 1.71-1T, Q&A-16 through 18, Temporary Income Tax Regs., 49 Fed. Reg. 34456-34457 (Aug. 31, 1984).

The term "divorce or separation instrument" includes a court decree requiring a spouse to make support payments to the other spouse.  See sec. 71(b)(2)(C).

### Support amounts determined by court rule

We examine the separation instrument in this case to determine whether it fixes a sum or part of a payment as payable for the support of a child of the payor spouse.  The March 9,

1994, retroactive order of support of the court of common pleas remained in effect until entry of the divorce decree of August 7, 1995.  The order of support requires petitioner's former spouse to pay "for support of spouse and one child."

In domestic relations proceedings in the Commonwealth of Pennsylvania, under Pennsylvania Rules of Civil Procedure (Pa. R. Civ. P.) 1910.16, the court on its own motion, or upon the motion of either party may make an unallocated award in favor of the spouse and one or more children, or the court may state separately the amount of support allocable to the spouse and to each child.  Here, the language of the order of support does not fix any specific amount for the payment of child support.  The language in petitioner's order of support makes an "unallocated" award of spousal and child support.

Petitioner's argument is that all awards of support for a spouse, a child, or both must, nevertheless, conform to guidelines mandated by Federal law and adopted under rules of the Pa. R. Civ. P.  Although unallocated, the amount of child support that she received, petitioner argues, is "easily determinable" by reference to the support guidelines.

Federal law and State requirements

By way of the Child Support Enforcement Amendments of 1984, Pub. L. 98-378, sec. 18(a), 98 Stat. 1321, amended by the Family Support Act of 1988, Pub. L. 100-485, sec. 103(a) and (b), 102

Stat. 2346, 42 U.S.C. secs. 602, 667 (1994), Congress mandated that each State "must establish guidelines for child support award amounts". Under 42 U.S.C. section 667(b)(2) (1994), "There shall be a rebuttable presumption" that a judicial award of child support in the amount that would result from application of the guidelines is the correct amount of child support to be awarded.

Pennsylvania adopted in 1989, pursuant to the Act of October 30, 1985, as amended, 23 Pa. Cons. Stat. Ann. section 4322 (West 1991), a support guideline formula that was in effect during the years at issue in this case. See Pa. R. Civ. P. 1910.16-1 through 3. The guidelines utilize the net incomes of both parties and are based on the assumption that a child's needs increase as the combined net income of the parents increases. See Pa. R. Civ. P. 1910.16-1, Explanatory Comment--1993, B.2. (1995). The amount of child support, spousal support, or alimony pendente lite "shall be determined in accordance with the support guidelines" either by using the net income formula or by using charts derived from the formula, called "grids". Pa. R. Civ. P. 1910.16-1(a); Pa. R. Civ. P. 1910.16-1, Explanatory Comment-1993, C. (1995); Pa. R. Civ. P. 1910.16-3(a); and see Ball v. Minnick, 648 A.2d 1192 (Pa. 1994).

By court rule, if the court determines that there is an obligation to pay support, "there shall be a rebuttable presumption that the amount of the award determined from the

guidelines is the correct amount of <u>support</u> to be awarded."

(Emphasis supplied.)  The presumption can be rebutted if the

trier of fact makes a written finding that the guideline amount

would be either unjust or inappropriate.  See Pa. R. Civ. P.

1910.16-1(b); <u>Ball v. Minnick</u>, <u>supra</u>.

For various net income levels of the parties and the number

of their children (up to 4), the grids provide two numbers, one

amount for child support only and one amount that is combination

of spousal and child support.  Merely by consulting the grids,

petitioner insists, the portion of the total amount of support

she received that is child support can be determined.

Amounts Must Be Fixed in the Instrument

Even assuming, for the sake of argument, that a simple

reference to the grid[1] would produce an accurate figure for what

portion of the amounts she received was for child support,

petitioner has not satisfied the requirements of section

71(c)(1).  The amount of child support must be fixed <u>by the terms</u>

<u>of the instrument</u>.  See sec. 71(c)(1).  The Supreme Court stated

---

[1]Respondent appears to raise an <u>evidentiary</u> objection to the use of the grids of Pa. R. Civ. P. 1910.16-2, on which petitioner bases part of her argument.  Our holding in the case  moots the objection.  But see <u>Hanley v. Donoghue</u>, 116 U.S. 1, 6 (1885)(law is known to the Court as law alone, needing no averment or proof); Advisory Committee's Note on judicial notice of law, Fed. R. Evid. 201, 56 F.R.D. 183, 207 (1973)(the rules are founded on the assumption that law is "never a proper concern of the rules of evidence but rather of the rules of procedure").

in Commissioner v. Lester, 366 U.S. 299, 303 (1961), that it is the "'written instrument' that must 'fix'" the portion of the payment that is for child support. Petitioner replies that Lester has been overruled by statute. While it is true that the result in Lester has been overruled by section 71(c)(2), the principles of Lester still apply to cases to which the latter provision does not. See, e.g., Raymond v. Commissioner, T.C. Memo. 1997-219; Ambrose v. Commissioner, T.C. Memo. 1996-128.

Of course, the statutory requirements are satisfied when an amount is payable entirely on behalf of the child. See Sperling v. Commissioner, T.C. Memo. 1982-681, affd. 726 F.2d 948 (2d Cir. 1984)(college tuition payments). But the language of the support order in this case makes an unallocated award of support to spouse and child. By making an unallocated award of support, in view of the language of Pa. R. Civ. P. 1910.16-5(f), it appears that the court of common pleas intended that the full amount of the periodic payments would be taxable to petitioner and deductible by Mr. Lawton. See Mannina v. Commissioner, T.C. Memo. 1985-565.

We observe also that the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422(a), 98 Stat. 795-796, reenacted as section 71(c)(1) the language of former section 71(b)(1) requiring the divorce or separation instrument to fix the amount of child support. In addition, DEFRA enacted "new" section

71(b)(1)(D). As enacted by DEFRA, section 71(b)(1)(D), as one of the requirements a cash payment must meet to be considered alimony, provides that the divorce or separation instrument must state that there is no liability to make a payment after the death of the payee spouse. The latter requirement was altered 2 years later by the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853. As a result of the TRA, if the other statutory requirements are met, even without language in the instrument a payment may be alimony if State law terminates the payor's liability at the death of the payee spouse. See Cunningham v. Commissioner, T.C. Memo. 1994-474. If Congress had intended that State law could fix the amount of child support payments where such amounts are not fixed by the terms of the divorce or separation instrument, it certainly could have made a similar change in the wording of section 71(c)(1). We conclude from the absence of such a change that Congress did not intend the interpretation that petitioner advocates.

Federal Policy and Pennsylvania Court Rule

Under section 215, an individual taxpayer is allowed to deduct amounts paid as "alimony or separate maintenance" as defined under section 71(b). Alimony and separate maintenance payments are includable in the gross income of the recipient under section 71.

The purpose of the Federal tax treatment of alimony is to relieve the payor of the burden of paying tax on the income which is transferred to the payee spouse as alimony and to impose that burden on the spouse receiving the alimony. In addition to transferring the tax burden, overall tax savings generally result because the payor spouse is usually taxed at a higher rate than the payee. See Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 714 (J. Comm. Print 1985). The same principles are recognized and followed by the courts of Pennsylvania. See Pa. R. Civ. P. 1910.16-5(f).

Respondent argues that Pa. R. Civ. P. 1910.16-5(f) also makes it clear that the grids already take into account the Federal tax consequences of support payments. We agree with respondent.

Although an order awarding both spousal and child support may either be allocated or unallocated, the grids assume that such an order will be unallocated. See Pa. R. Civ. P. 1910.16-5(f). Therefore, if an order is to be allocated, instead of the grids "the formula set forth in Rule 1910.16-3(a) shall be utilized to determine the amount of support allocable to the spouse", making adjustments for the Federal income tax consequences of an allocated order. Pa. R. Civ. P. 1910.16-

- 13 -

5(f);[2] see <u>Holland v. Holland</u>, 663 A.2d 768, 770 (Pa. Super. 1995) ("While the entire amount of an unallocated award is taxable as income to the recipient spouse, the child support portion of an allocated award is taxed instead to the payor"), citing <u>Coffey v. Coffey</u>, 575 A.2d 587, 590-591 (Pa. Super. 1990); <u>Reisinger v. Reisinger</u>, 471 A.2d 544, 545-546 (Pa. Super. 1984).

Were we to accept petitioner's argument, the Federal tax results would be the same whether the State court makes an allocated or an unallocated award of spousal and child support, a result contrary to both Federal law and State policy and practice.

The relief petitioner, in effect, seeks in this Court (allocation of unallocated support payments to child support) could have been sought directly by petitioner, by motion in the court of common pleas. See Pa. R. Civ. P. 1910.16; see also <u>Ambrose v. Commissioner</u>, <u>supra</u>.

<u>Contingency Related to the Child</u>

Petitioner also states that the Court, applying section 71(c)(2), has treated amounts as child support where the

---

[2]The support guidelines formula of Pa. R. Civ. P. 1910.16-3 is based in large part upon the parties' "net income". In determining "net income" certain subtractions must be made, including those for "federal, state, and local income taxes" and for "alimony paid to the other party". Pa. R. Civ. P. 1910.16-5(b). Certain additions must also be made; one of the additions to the net income of a party, in the discretion of the trier of fact, is alimony. <u>Id.</u>

happening of a contingency related to the child causes the support payment to be reduced.  We agree.  See <u>Hammond v. Commissioner</u>, T.C. Memo. 1998-53; <u>Fosberg v. Commissioner</u>, T.C. Memo. 1992-713.  Petitioner, however, fails to point out, and we are unable to find, any contingency in the support orders in evidence that is of the type described in section 71(c)(2). There is accordingly no warrant for treating any portion of the subject payments as child support.  See <u>Heller v. Commissioner</u>, T.C. Memo. 1994-423.

## Conclusion

Respondent's determination that amounts paid to petitioner for support in 1994 and 1995 are alimony income is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.